A04A2193. LONG v. THE STATE.
(610 SE2d 74)

BLACKBURN, Presiding Judge.

Following her conviction of driving under the influence of alcohol to the extent she was a less safe driver[1] and failure to dim headlights,[2] and the denial of her motion for new trial, Teresa A. Long appeals, arguing that: (1) the evidence was insufficient to support her conviction for less safe driver DUI; and that the trial court erred in (2)

[1] OCGA § 40-6-391 (a) (1).
[2] OCGA § 40-8-31.

refusing to exclude evidence of her refusal to submit to a voluntary field sobriety test, and (3) denying her right to concluding argument at trial. For the reasons which follow, we affirm.

1. Long maintains that the evidence was insufficient for the jury to find her guilty of driving under the influence of alcohol to the extent she was a less safe driver. We disagree.

> On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[3] The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Ricks v. State*.[4]

Viewed in the light most favorable to upholding the verdict, the record shows that, at approximately 10:30 p.m. on July 3, 2003, Deputy Michael Wells saw Long repeatedly flashing her high beam headlights as she drove down the highway toward him. Turning around, Wells pursued her. When Long changed lanes for a left turn, Wells turned on his blue lights, but Long continued in the left lane; Wells then activated his siren, and Long returned to the right lane and pulled into a school parking lot.

When Wells approached Long, he noticed that her eyes were glassy and bloodshot, and he could smell alcohol on her person. Wells asked Long if she had had anything to drink, but she denied that she had. Wells told Long that he could smell alcohol on her breath, but Long insisted that she had had nothing to drink. At this point, Wells asked Long to take an alco-sensor test. Long replied, "No, Sir."

Wells asked Long to turn off the engine and exit the vehicle; Long complied. Wells then asked Long if she would submit to field sobriety tests. Long said, "No." After this refusal, Wells arrested and hand-cuffed Long. He read her the implied consent warning and then asked if she would submit to a chemical test. Long replied, "No." Long was taken to the detention center, where she again was offered, and chose to refuse, an opportunity to take a chemical test.

We find that the evidence was sufficient to allow a rational trier of fact to find Long guilty of less safe DUI beyond a reasonable doubt.

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[4] *Ricks v. State*, 255 Ga. App. 188 (1) (564 SE2d 793) (2002).

A conviction under OCGA § 40-6-391 (a) (1) does not require proof that a person actually committed an unsafe act while driving; it only requires sufficient evidence to authorize a finding, beyond a reasonable doubt, that the defendant was operating or in actual physical control of a moving vehicle while under the influence of alcohol to the extent that it was less safe for her to drive. Circumstantial evidence may be sufficient to meet this burden of proof.

(Citation omitted.) *Self v. State.*[5]

Wells testified that there was an odor of alcohol on Long's breath and that her eyes were bloodshot. Though this testimony alone would have been insufficient to support her conviction, see, e.g., *Bowen v. State*[6] ("evidence which only shows that a defendant's eyes were 'red and glassy, and he had an odor of (marijuana) about his breath' is insufficient to support a conviction for driving under the influence to the extent that it was less safe for him to drive"), there was additional evidence supporting the conviction. Besides the evidence of Long's appearance and odor, the jury was authorized to consider Long's refusal, prior to her arrest, to submit to the field sobriety tests. *Bravo v. State*[7] ("[e]vidence that an accused, who was not in custody at the time, refused to take field sobriety tests is admissible in a trial for DUI"). In addition, her "refusal to take the state-administered chemical test was admissible as circumstantial evidence of [her] intoxication," *Johnson v. State*,[8] and, together with the other evidence discussed above, would support an inference that she was an impaired driver. Compare *Baird v. State*[9] ("the presence of alcohol in a defendant's body, by itself, does not support an inference that the defendant was an impaired driver") (emphasis omitted). Finally, Wells's testimony that Long had flashed her high beam lights at him as he approached her from the opposite direction was evidence of Long's impaired state. Given this evidence, a rational trier of fact could have found Long guilty of driving under the influence of alcohol to the extent that she was a less safe driver.

2. In her second enumeration of error, Long contends that the trial court erred in refusing to exclude evidence of her refusal to submit to voluntary field sobriety tests. Citing *Mallory v. State*,[10] Long first argues that her exercise of her right to decline voluntary

---

[5] *Self v. State*, 232 Ga. App. 735, 736 (2) (503 SE2d 625) (1998).

[6] *Bowen v. State*, 235 Ga. App. 900, 901 (510 SE2d 873) (1999).

[7] *Bravo v. State*, 249 Ga. App. 433, 434 (1) (548 SE2d 129) (2001).

[8] *Johnson v. State*, 249 Ga. App. 29, 31 (2) (546 SE2d 922) (2001).

[9] *Baird v. State*, 260 Ga. App. 661, 663 (1) (580 SE2d 650) (2003).

[10] *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991).

field tests is analogous to an exercise of her right to remain silent and to choose not to perform potentially incriminatory acts. This argument lacks merit.

In *Mallory*, our Supreme Court took the "opportunity to hold that in criminal cases, a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative." Id. at 630. However, in *Keenan v. State*,[11] a case decided two years after *Mallory*, the Supreme Court rejected the very argument Long now makes. Under the express holding in *Keenan*, there was no violation of Long's right not to incriminate herself under either the Fifth Amendment or the Georgia Constitution because she was not in custody at the time the field sobriety test was requested. Id. at 572 ("It follows that the trial court did not err in admitting evidence of appellant's pre-arrest refusal to undergo the alco-sensor test. There was no violation of appellant's right not to incriminate himself under the fifth amendment [or] the Georgia Constitution . . . because he was not in custody at the time the field sobriety test was requested."). See also *Forsman v. State*[12] ("[s]ince Forsman was not arrested until after he failed the HGN and refused to take additional field sobriety tests, there was no violation of his constitutional right against self-incrimination"); *Arce v. State*[13] ("[n]o *Miranda* warnings are required before administering field sobriety tests during a traffic stop unless the suspect is in custody").

Long next argues that the administration of field sobriety tests is an invasion of an individual's reasonable expectation of privacy under the Fourth Amendment, and that commenting on her refusal to submit to the field tests is equivalent to commenting on the failure to consent to a warrantless search. This argument, too, is meritless.

> Georgia law recognizes three tiers of police-citizen encounters: (1) consensual encounters; (2) brief detentions that must be supported by reasonable suspicion; and (3) arrests, which must be supported by probable cause. During a second-tier encounter, an officer is permitted to question a suspect to gather evidence of possible intoxication. Additionally, an officer may conduct field sobriety tests, even in the absence of *Miranda* warnings.

(Footnotes omitted.) *State v. Oliver*.[14]

---

[11] *Keenan v. State*, 263 Ga. 569, 572 (2) (436 SE2d 475) (1993).

[12] *Forsman v. State*, 239 Ga. App. 612, 613 (3) (521 SE2d 410) (1999).

[13] *Arce v. State*, 245 Ga. App. 466 (538 SE2d 128) (2000).

[14] *State v. Oliver*, 261 Ga. App. 599, 601 (583 SE2d 259) (2003).

When Wells saw Long flashing her high beam lights, he acquired reasonable suspicion of criminal conduct authorizing him to briefly detain her in order to proceed with appropriate additional investigation. As that investigation began, he smelled alcohol on her and observed her glassy, bloodshot eyes. Contrary to Long's contentions, "Georgia law recognizes that law enforcement officers may briefly detain suspects for the purpose of continued investigation based upon reasonable suspicion without violating the Fourth Amendment." *Oliver*, supra. Accordingly, the officer's reasonable articulable suspicion that Long was intoxicated provided a legal basis for asking her to submit to field sobriety tests, and her rights under the Fourth Amendment were not violated.

In a third argument, Long invokes the rule of statutory construction that the express mention of one thing implies the exclusion of another thing (expressio unius est exclusio alterius), and concludes that the legislature did not intend for a defendant's refusal to submit to field sobriety tests to be admissible in evidence against her since OCGA § 40-6-392 (d) provides only that the refusal to submit to a chemical test is admissible against a defendant. We disagree.

The doctrine of expressio unius est exclusio alterius means that when particular things are enumerated in a statute, things not mentioned are excluded from application of the statute. Thus, for the doctrine to apply, it must appear that a complete enumeration or list normally would have included that which was omitted, thus making omission from the statute significant or indicative of legislative intent. OCGA § 40-6-392 deals only with "[c]hemical tests for alcohol or drugs in blood"; it does not concern any other tests for sobriety, including the alco-sensor test and field sobriety tests. In short, OCGA § 40-6-392 is inapplicable to field sobriety tests. *Keenan*, supra. Accordingly, the legislature's failure to state in OCGA § 40-6-392 that the refusal to submit to field sobriety tests is admissible in evidence against a defendant is neither significant nor an indication of legislative intent, and the doctrine has no application.

3. Long complains that the trial court erred in denying her the right to make the concluding argument. We disagree.

The record shows that, at the close of the State's case, Long asked the trial judge for permission to "recall" Wells, the State's witness, for purposes of cross-examination though she had asked no questions of the witness. Long also informed the court that she had a motion. At this point, the jury retired and the following exchange ensued:

STATE: I'm — I know I'm formally not supposed to be the first one to talk at a motion like this, but I think I'm going to

have to interpose an objection to this. I've never been in a situation where somebody, I guess, moved for a — an acquittal, which I think is your motion?

LONG: That's correct.

STATE: Prior to the State resting.

LONG: Oh, I'm sorry.

STATE: I think Counsel was bound to make a choice whether or not to cross-examine the Officer. And, — and, was bound to wait for the State's resting to make the motion. I think I understand why it's being done, but I — I don't think that's proper.

COURT: Well, she asked for permission to call the witness for cross-examination when she presented her case. That's what I understood.

LONG: Your Honor, it would become a part of my case. However, it would still not waive the right to — to open and close, is the way I read the rules of evidence.

COURT: Can [you] give me an authority to cite that you can move for motion before the State's rested?

LONG: I — I might have been presumptuous, Your Honor. I assumed that since he was the only witness on the witness list and that [the prosecutor] had said he was finished, I assumed that that would be resting. I'd be glad to wait until [the prosecutor] officially rested —

COURT: Well, do you want —

LONG: — on the record.

COURT: — do you want to decline to do cross-examination now and ask for the permission to call the Officer for purpose of cross-examination in your case?

LONG: Your Honor, I would ask for permission to recall the witness for cross-examination prior to deciding whether I would like to — obviously, if Your Honor is not going to give permission then I will cross-examine. At this point, I don't want to decline the cross-examination altogether. So, it's just —

COURT: I don't see —

LONG: — whether Your Honor will give permission.

COURT: — I don't see anything wrong with that. I just want to get it in the right sequence.

LONG: I understand, Your Honor.

COURT: Okay, so, are you declining to cross-examine the witness now and asking the Court to allow you to recall the witness for cross-examination —

LONG: If Your Honor will allow me —

COURT: — in your case?

LONG: — to recall, I decline.

COURT: All right. I don't see any problem with that. I'll — I'll let you do that.

Long then moved for a directed verdict. After her motion was denied, the prosecutor asked Long to cite "authority for the proposition that after the State rests and the Defendant calls the Officer as a witness for its case that it does not lose its right to close." Long cited to a handbook on evidence and to our decision in *Maddox v. State*.[15] At this point, the trial judge explained, "By calling the witness, even if it is for the purpose of cross, and the witness is adverse to you, is calling a witness. So, I'm going to exercise my discretion, by saying that by proceeding the way that you have that that is evidence and you lose your right to both opening and closing — if you're not going to submit any other evidence." After further explanation of its decision by the trial court, Long decided to call Wells to the stand as a witness.

Again citing *Maddox*, supra, Long argues on appeal that the trial court erred in denying her the right to concluding argument. *Maddox* refutes, rather than supports, Long's argument. In *Maddox*, the trial court ruled that the defendant had waived the right to open and conclude jury argument because, after the State had rested its case, the defendant had called to the stand a witness who had previously testified for the State. On appeal, the appellants maintained "that they had called the witness merely for the purpose of completing cross-examination." *Maddox*, supra at 730 (2). We held that the trial court " 'correctly ruled that the (appellants) had introduced testimony, and that the state was entitled to open and conclude the argument in the case,' " id. at 731, explaining:

> The defendant in a criminal case may under some circumstances recall to the stand a witness who has been introduced and has testified in behalf of the State, without forfeiting his right to conclude the argument; but to avoid a forfeiture of the right to conclude, he must distinctly inform the presiding judge as to the reason why he did not conclude his examination of the witness while the witness was on the stand. The court must have an opportunity of determining the validity of the reason given, and of ruling thereon.

(Punctuation omitted.) Id. at 730-731.

---

[15] *Maddox v. State*, 174 Ga. App. 728 (330 SE2d 911) (1985).

Long concedes that the trial court had discretion to deny her request to call Wells for the purpose of cross-examination, but contends that once the court granted the request, it abused its discretion by denying her the right to concluding argument. The colloquy quoted above reveals that the only request granted by the trial court was Long's request to question Wells after, rather than before, the State rested and she moved for an acquittal. The trial court twice stated its understanding that Long was just asking for permission to call the witness for cross-examination when she presented *her case* and that the issue was getting "it in the right sequence." The court did not address or even acknowledge Long's position that, in doing so, she did not waive the right to opening and closing argument. While it appears that Long misunderstood the scope of the trial court's ruling on her request, any misunderstanding as to the ruling must be attributed to Long's misunderstanding of the holding in *Maddox.* That holding applies to cases in which counsel had a reason to recall a witness to the stand because he "did not conclude his examination of the witness while the witness was on the stand"; it has no application to cases such as the present one in which a defendant calls a witness to the stand and first questions that witness in the presentation of her own case. Had Long had a proper understanding of the case, she could not have misunderstood the extent of the court's ruling.

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED DECEMBER 6, 2004 —
RECONSIDERATION DENIED FEBRUARY 10, 2005 — ■

*Marny J. Heit, Robert W. Chestney,* for appellant.
*David L. Cannon, Jr., Solicitor-General, Barry W. Hixson, Assistant Solicitor-General,* for appellee.