## A04A1988. LENDERMAN v. THE STATE.
(611 SE2d 135)

BARNES, Judge.

Benjamin Frank Lenderman appeals his convictions, following a bench trial, of rape, aggravated assault, kidnapping with bodily injury, and burglary. Although Lenderman contended that he was not mentally competent to stand trial and that he was not mentally responsible for his actions at the time of the crimes, the trial court found him guilty but mentally ill of each count charged in the indictment. On appeal, Lenderman contends that the trial court erred by denying his motion for a new trial because his trial defense counsel was ineffective within the meaning of *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). For the reasons stated below, we find no error and affirm.

The evidence shows that on the date in question, Lenderman broke into the victim's apartment with a knife in his hand. They struggled and Lenderman stabbed the victim. After Lenderman ordered the victim to go to her bedroom and disrobe, he raped her.

At trial, a psychologist described his interview with Lenderman and stated that Lenderman was not taking his medications, even though he pretended to do so, because he did not like the way they made him feel. He related Lenderman's clinical history and also testified that Lenderman told him he was feigning symptoms while he was incarcerated because he was trying to be sent to Central State Hospital. The expert concluded that Lenderman understood right from wrong, understood the charges against him, was competent to stand trial, could assist in his own defense, and was responsible for his actions. He further concluded that Lenderman's behavior was planned and was consistent with someone who knew that his behavior was wrong.

Lenderman testified in his own defense after being advised by the court of his right to do so or refrain from doing so. He admitted having sexual relations with the victim, but denied that it was a vicious rape. He denied hitting the victim in the face, and also presented convoluted explanations for all of the charges against him, and contended that his actions were the result of the victim robbing him on numerous occasions. He also contended that he did not kidnap the victim because he did not transport the victim anywhere.

The trial court first considered whether Lenderman was competent to stand trial and concluded, based in part on the court's observation of Lenderman, that he was. The court next considered whether Lenderman was responsible for his actions and found that he had the mental capacity to distinguish right from wrong. The court also found that Lenderman had the intelligence and capacity to form criminal intent and concluded, based on the psychological evaluation,

the evidence presented at trial, and Lenderman's actions at and around the time of the crimes, that he was mentally responsible for his actions, and that he was guilty, but mentally ill, of the crimes of which he was charged.

Lenderman's mother testified during the sentencing proceedings, however, that he was a paranoid schizophrenic and had been one for twelve years. She also testified that he had had a nervous breakdown and had been committed to mental institutions on many earlier occasions.

After his conviction, Lenderman filed a motion for new trial contending, among other issues not relevant here, that his defense counsel was ineffective. At the evidentiary hearing on Lenderman's motion, his trial defense counsel testified about representing Lenderman. He related how Lenderman would discuss the facts of the incident giving rise to these charges, but would then explain why these actions were not a crime, "[e]ven though he was explaining what he did was a crime." According to the defense counsel, Lenderman "was confused."

Defense counsel had represented Lenderman before in another criminal matter and that time he prepared a special plea of incompetency to stand trial that was granted, but Lenderman refused to sign it. In this case, Lenderman refused to admit that there was anything wrong with him. Thus, although they discussed an insanity defense, the discussions were short lived, and Lenderman said that he did not want to be evaluated.

At the conclusion of the hearing on the motion, the trial court ruled as follows:

> As far as ineffective assistance of counsel, Mr. Leslie was certainly ineffective.[1] I didn't see anything that he did that could be termed ineffective assistance of counsel. He talked about his strategy in presenting the case to the court and his attempts to get Mr. Lenderman help for his problem. And his strategy of attempting to get the court to find Mr. Lenderman not guilty by reason of insanity. Which would mean that he would go to be in the custody of the Department of Human Resources as opposed to the Department of Corrections.
>
> His client didn't want him to do that. But you have a different test as far as legal, what a delusion is, and the

---

[1] Considering the remainder of the trial court's comments, either the court had a slip of the tongue or the court reporter misunderstood what the court said. In any event, we cannot conclude from the court's entire ruling that the trial court found counsel to have been ineffective within the meaning of *Strickland v. Washington*, supra.

definition under certainly laymen terms or psychiatric terms.

The court has to follow what the statute says about these, the various tests, of guilty. The court has a choice. Guilty, not guilty by reason of insanity, or not guilty. Guilty, not guilty, not guilty by reasons of insanity, or guilty but mentally ill.

To be successful on a claim of ineffective assistance,

a defendant must show that counsel rendered deficient performance and that actual prejudice resulted. Counsel are strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and counsel's performance is evaluated without reference to hindsight. A petitioner has suffered actual prejudice only where there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Ineffective assistance claims are mixed questions of law and fact. We accept the [trial] court's findings of fact unless clearly erroneous and independently apply the law to those facts.

(Citations and punctuation omitted.) *Head v. Hill*, 277 Ga. 255, 266 (VI) (587 SE2d 613) (2003). Further, "[w]hen considering a claim of ineffectiveness, a critical distinction exists between inadequate preparation and unwise trial strategy." *Ucak v. State*, 273 Ga. 536, 538 (2) (544 SE2d 133) (2001).

Decisions regarding which witnesses to present are matters of trial strategy. When founded on legitimate evidentiary concerns, such decisions do not constitute ineffective assistance of counsel. *DeYoung v. State*, 268 Ga. 780, 786 (5) (493 SE2d 157) (1997). See also *Slade v. State*, 270 Ga. 305 (2) (509 SE2d 618) (1998) (matters of trial strategy and tactic should not be judged in hindsight).

*Rodriguez v. State*, 271 Ga. 40, 45 (5) (b) (518 SE2d 131) (1999). To prevail on his claim, Lenderman was required to show that, "absent trial counsel's [purported] deficient performance, there is a reasonable likelihood that the outcome of the trial would have been different. [Cits.]" *White v. State*, 265 Ga. 22, 23 (2) (453 SE2d 6) (1995). In this case, however, Lenderman did not met this burden because he did not show that his counsel's failure to request another

psychiatric or psychological evaluation, to attempt to locate another expert witness who might testify differently, or to raise his competency to assist in his own trial as a separate issue reasonably could be expected to alter the outcome of his trial.

We are not required to consider whether the performance of Lenderman's trial defense counsel was deficient, because Lenderman has failed to show that his counsel prejudicially affected his defense.

> In assessing the prejudicial effect of counsel's failure to call a witness (whether that failure resulted from a tactical decision, negligent oversight, or otherwise), a petitioner is required to make an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of his case.

> The failure of trial counsel to employ evidence cannot be deemed to be "prejudicial" in the absence of a showing that such evidence would have been relevant and favorable to the defendant. Because appellant failed to make any proffer of the uncalled witnesses' testimony, it is impossible for appellant to show there is a reasonable probability the results of the proceedings would have been different. It cannot possibly be said that the additional witnesses would have testified favorably to appellant.

(Citation and punctuation omitted.) *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995).

Lenderman's new counsel called no expert witnesses at the hearing on this motion to contradict the expert's testimony at trial that Lenderman was competent to assist in his trial and was responsible for his actions, called no lay witnesses to testify about Lenderman's mental state, and made no proffer of any such testimony. Instead, counsel argued that the trial defense counsel "could" have called such witnesses. If such witnesses existed, however, counsel was obliged to produce them at the hearing or make a proffer of such testimony. We note, however, that Lenderman's trial defense counsel requested the psychological evaluation and accepted the results of the evaluation because he was satisfied with the thoroughness of the evaluation, the report, and the expert's qualifications. He knew of no expert more qualified than this expert, and had used him as a defense expert in other cases.

Under the evidence presented at the hearing on Lenderman's motion for new trial, it is impossible to conclude that the original defense counsel's pursuit of such additional experts would have changed the outcome of his trial. Consequently, Lenderman failed to

meet the burden imposed on him by our law, and the trial court's finding that his counsel was not ineffective was not clearly erroneous.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 3, 2005.

*Rhonda Roell-Taylor*, for appellant.

*Howard Z. Simms, District Attorney, Graham A. Thorpe, Dorothy V. Hull, Assistant District Attorneys*, for appellee.